UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
PAOLO LONGO,

                Plaintiff,

                                              **Docket No.**
                                              **04-CV-10241 (GBD)**

    -against-


BREDA TRANSPORTATION, INC.,

                Defendant.
---------------------------------------------------------X


**PLAINTIFF'S MEMORANDUM OF LAW
IN OPPOSITION TO
DEFENDANT'S MOTION
FOR JUDGMENT AS
A MATTER OF LAW
UNDER FED. R. CIV. P. RULE 50(b)**


**SUBMITTED BY:
LAW OFFICES OF MICHAEL G. BERGER
ATTORNEYS FOR PLAINTIFF
250 PARK AVENUE, 20TH FLOOR
NEW YORK, NEW YORK  10177
(212) 983-6000**

## TABLE OF CONTENTS

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................. 1

I.  BTI IS NOT ENTITLED TO
JUDGMENT AS A MATTER OF LAW
BECAUSE THE EVIDENCE
WAS LEGALLY SUFFICIENT ................................................................. 3

    A.     BTI's Motion Is Barred by the Law of the Case Doctrine .................... 3

    B.     Longo's Employment Agreement
             Was Enforceable as a Matter of Law ...................................................... 4

           1.   Longo's employment agreement was valid ................................ 4

           2.   Longo's employment agreement
               is valid under New York Law
               and BTI's cases are either
               distinguishable, inapposite, or
               actually support Longo's position ................................................ 8

    C.     Longo Established Each of the Elements of His Claim
             By Legally Sufficient Proof ..................................................................... 10

           1.   BTI has not met the legal standard ......................................... 10

           2.   Longo established proof of each required
               element of his contract claim....................................................... 12

II. BTI WAIVED AND WITHDREW
ITS AFFIRMATIVE DEFENSE OF LEGAL CAUSE;
THE DEFENSE IS MERITLESS IN ANY EVENT ................................... 17

    A.     BTI Waived and Withdrew
             Its Affirmative Defense of Legal Cause................................................... 17

    B.     BTI's Affirmative Defense of Legal Cause
             Is Meritless in Any Event ........................................................................ 19

CONCLUSION ........................................................................................................ 21

## TABLE OF AUTHORITIES

**CASES**

*Alston v. New York City Transit Authority,*
    14 F.Supp.2d 308 (S.D.N.Y. 1998) .......................................................... 11, 14

*Arentz v. Morse Dry Dock and Repair Co.,*
    249 N.Y. 439 (1928) ........................................................................ 9, 10

*Boyle v. Petrie,*
    136 Misc.2d 380, 518 N.Y.S.2d 854 (Sup. Ct. N.Y. Cty. 1987) ........................... 19, 20

*Cobb v. Pozzi,*
    363 F.3d 89 (2d Cir. 2004) ..................................................................... 10

*Cruz v. Local Union No. Three of the Int'l Bhd. of Elec. Workers,*
    34 F.3d 1148 (2d Cir. 1994) ...................................................................... 11

*De Petris v. Union Settlement Assoc.,*
    86 N.Y.2d 406 (1995), ............................................................................. 9

*Hunnewell v. Mfrs. Hanover Trust Co.,*
    628 F.Supp. 765 (S.D.N.Y. 1986) ............................................................... 10

*Johnson v. Johnson,*
    191 A.D.2d 257 (1st Dept. 1993) ................................................................. 8

*Kerman v. City of New York,*
    374 F.3d 93 (2d Cir. 2004) ........................................................................ 2

*Kotick v. Desai,*
    123 A.D.2d 744 (2d Dept. 1986) ................................................................ 10

*Passy v. Guild Concepts, Ltd.,*
    1992 WL 73477 (S.D.N.Y. April 2, 1992) ................................................... 9, 10

*Phoenix Racing, Ltd. v. Lebanon Valley Auto Racing Corp.,*
    53 F.Supp.2d 199 (N.D.N.Y. 1999) .............................................................. 4

*Prisco v. A&D Carting Corp.,*
    169 F.3d 593 (2d. Cir. 1999) ..................................................................... 4

*Rooney v. Tyson*,
   91 N.Y.2d 685 (1998) ................................................................................. 8, 9

*Virgin Atlantic Airways v. Nat'l Mediation Bd.*,
   956 F.2d 1245(2d Cir. 1992).......................................................................... 4

*Weiler v. Nat'l Multiple Sclerosis Soc'y*,
   1980 WL 104 (S.D.N.Y. February 27, 1980) ............................................... 10

*Wright v. Cayan*,
   817 F.2d 999 (2d Cir. 1987).......................................................................... 10


**FEDERAL RULES OF CIVIL PROCEDURE**

**RULE 50(b)**....................................................................................... 1, 11, 14

**RULE 51**.......................................................................................... 17, 18, 19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

PAOLO LONGO,                                    Docket No.
                                                04 CV 10241 (GBD)
                        Plaintiff,

        - against -

BREDA TRANSPORTATION, INC.,

                        Defendant.
-------------------------------------------------------X

## PLAINTIFF'S MEMORANDUM OF LAW
## IN OPPOSITION TO
## DEFENDANT'S MOTION
## FOR JUDGMENT AS
## MATTER OF LAW
## UNDER FED. R. CIV. P.  RULE 50(b)

Plaintiff Paolo Longo ("Longo"), by and through his attorneys, Law Offices of Michael G. Berger, respectfully submits this Memorandum of Law, in opposition to the motion by Defendant Breda Transportation, Inc. ("BTI") for judgment as a matter of law  ("JMOL") pursuant to Fed. R. Civ. P. Rule 50(b).

In its motion, BTI ignores the clear language of its own Employment Agreement, the consistent rulings of this Court, the settled law of New York, and the overwhelming evidence at trial. BTI's motion is legally and factually deficient and should be denied.

## INTRODUCTION AND SUMMARY OF ARGUMENT

The evidence at trial, much of it uncontradicted or even admitted, established that Longo had a valid and enforceable written contract with BTI, which the parties

honored and observed for decades, until BTI's wrongful termination and breach; that Longo performed all tasks required of him under the contract and was ready willing and able to continue to perform such tasks when terminated; that BTI had no grounds whatsoever under the contract to terminate the contract or Longo's employment; that BTI expressly waived any right to even claim legal cause outside the contract, and had no such grounds in any event; and that Longo was damaged by BTI's breach.

As shown in Point IA, the entire thrust of BTI's motion on the issue of enforceability of the Employment Agreement is predicated on arguments previously rejected by this Court: (a) on April 20, 2005 in its denial of BTI's motion to dismiss; (b) on October 25, 2006 in its denial of BTI's motion for summary judgment; (c) on February 2, 2007 in its denial for BTI's motion for judgment on the pleadings at the close of Plaintiff's case (See Tr., 965:19-967:3); and (d) on February 8, 2007 in its denial of BTI's motion for a directed verdict at the close of all evidence (See Tr., 1660:4-9). As "the standard for judgment as a matter of law is the same as the standard for summary judgment," *Kerman v. City of New York,* 374 F.3d 93, 118 (2d Cir. 2004), BTI's relief is therefore barred by the Law of the Case doctrine.

As shown in Point IB, even assuming that BTI's motion were to be entertained, it is meritless as a matter of law because the Employment Agreement was fully enforceable. As shown in Point IC, Longo established each of the elements of his claim by legally sufficient proof.

As shown in Point II, to the extent that BTI argues that it had legal cause, it is barred by its own express waiver of any right it otherwise might have had to submit the matter to the jury. This occurred during the charging conference, when BTI withdrew its affirmative defense of legal cause after careful consideration (See Tr., 1153:4-10). BTI waived its rights when it failed to make any objections to the charge as it was given to the jury. See Tr., 1705:25-1706:4.

Thus, even assuming that the issue of legal cause was still viable at the close of evidence, despite BTI's total failure of proof, BTI not only failed as a matter of law to preserve this issue for review by this or any appellate court, but actually affirmatively waived its rights on the record.

## ARGUMENT

### POINT I

### BTI IS NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW BECAUSE THE EVIDENCE WAS LEGALLY SUFFICIENT

A.   BTI's Motion Is Barred by the Law of the Case Doctrine

This Court has already expressly ruled, after full briefing and extensive oral argument, that "I do not find under any circumstances that it has no force and effect simply because it is defined as an indefinite contract."  See Excerpt of Transcript of Proceedings, April 20, 2005, at p. 56, a copy of which is attached as Exhibit 1.

Under the Law of the Case doctrine, when a court has already ruled on an issue, that court should adhere to its decision in the subsequent stages of the same

case. *See, Prisco v. A&D Carting Corp.,* 169 F.3d 593, 607 (2d Cir. 1999); *Phoenix Racing, Ltd. v. Lebanon Valley Auto Racing Corp.,* 53 F.Supp.2d 199 (N.D.N.Y. 1999). In limited cases, departures from the law of the case are justified where there is an intervening change of controlling law, the availability of new evidence, or the need to correct clear error or prevent manifest injustice, none of which apply in this case. *See Phoenix Racing, Ltd.* at 218 (citing *Virgin Atlantic Airways v. Nat'l Mediation Bd.,* 956 F.2d 1245, 1255 (2d Cir. 1992)).

As to new evidence, BTI admittedly failed to adduce any new facts at trial regarding the formation of the Employment Agreement, nor did it even attempt to contradict Longo's proof that the parties observed and honored the Employment Agreement for decades. Vitaliano Pappaianni, Marcello Acquaviva and Giancarlo Fantappiè had no knowledge of the formation of the Employment Agreement, and, of course, neither did Ricardo Zayas or Charles Sodikoff. Instead, BTI relies now on the same factual record, and most of the same legal authority, that it placed before this Court in its earlier unsuccessful motions to dismiss and for summary judgment. For the reasons Longo submitted to the Court earlier and in these papers, as well as because of the Law of the Case doctrine, this Court should adhere to its earlier correct ruling that the Employment Agreement is valid and enforceable.

**B.** **Longo's Employment Agreement Was Enforceable as a Matter of Law**

    (1)   Longo's employment agreement was valid.

BTI persists in its untenable claim that Longo's Employment Agreement is invalid and terminable at-will because it is for an indefinite term. Not only is this

demonstrably false in view of the highly specific provision for "Duration," the express limitations on BTI's right to terminate Longo, and the express mechanisms for such termination, but the fact that such provisions and limitations exist shows the absurdity of BTI's position.   Put simply, if the Employment Agreement was terminable at-will, why would there be numerous specific references devoted to duration and termination?

Section 2 of Longo's Employment Agreement, entitled "Duration" provides:

> This agreement shall be for an indefinite term, and, except as provided in paragraph 5, may not be terminated prior to the twelfth month following delivery and acceptance of the last vehicle sold now and thereafter in the U.S.A. by the parent company, Breda Costruzioni Ferroviarie S.p.A.

The Employment Agreement preliminarily refers to "an indefinite term," and goes on, in that very same sentence, to provide a specific and precise termination point, namely "the twelfth month following delivery and acceptance of the last vehicle sold now and thereafter in the U.S.A. by the parent company, Breda Costruzioni Ferroviarie S.p.A."   The Employment Agreement's duration is thus precise and capable of being determined.

The Employment Agreement contains both express limitations on BTI's right to terminate Longo, and express mechanisms for such termination in the event the conditions to such limitations occurred, providing at Section 5, entitled "Termination":

> This agreement may be terminated either by BTI or by Mr. Longo on no less than six months' prior written notice in the event that:

-Mr. Longo is unable to perform his duties as the consequence of illness or injury which disables him for a consecutive period in excess of twelve (12) months.

-Mr. Longo unreasonably refuses to perform his assigned duties, or he unjustifiably performs such duties unsatisfactorily.

-Mr. Longo discloses, without authorization, confidential information relating to Breda Costruzioni Ferroviarie S.p.A. or any of the other companies that may avail themselves of the services of BTI.

-BTI refuses to fulfill its obligations to Mr. Longo or fulfills such obligations unsatisfactorily.

-Breda Costruzioni Ferroviarie S.p.A. terminates its business in the U.S.A.

-The parties mutually consent to termination.

This limitation on BTI's right to terminate Longo, and on Longo's right to terminate his relationship with BTI, was express, mutual, and enforceable.

Totally aside from the fact that the Employment Agreement is valid on its face, overwhelming and uncontradicted facts show that both parties treated it as valid and enforceable, and received the benefits of it, throughout Longo's tenure, even through his wrongful termination. See generally, Tr., 197:24-198:24; 200:6-12.

To cite just a few specific examples of the many established at trial, BTI and Longo always followed the Employment Agreement's various obligations at paragraphs 4 and 6 with respect to vacations and absences from the office, and meticulously calculated salary increases every year in accordance with the express cost of living provisions of paragraph 3. See Tr., 197:24-198:24; 200:6-12.

Fantappiè, the head of BTI who fired Longo (See Tr., 1505:13-16), and Pappaianni, the General Manager and CFO of BTI's Parent Company, repeatedly expressly ratified the validity and enforceability of Longo's Employment Agreement, orally and in writing, long after the alleged conduct now complained of and even as late as shortly before Longo's improper termination. See, for example, Plaintiff's Exhibit 77 (a copy of which is attached as Exhibit 2), a September 3, 2004 e-mail authored by Fantappiè who states "[w]e are fully aware of the terms of your employment agreement, and we will abide by them."

Finally, although BTI falsified the grounds for Longo's termination, it terminated him by invoking the precise termination language of Longo's Employment Agreement, the very agreement that it claimed was void and unenforceable. Compare Plaintiff's Exhibit 106 Employment Agreement at paragraph 5 (a copy of which is attached as Exhibit 3), and Plaintiff's Exhibit 107 (a copy of which is attached as Exhibit 4), where BTI claims that Longo "unreasonably refused to perform duties that have been assigned to [him] and have without justification performed other duties in an unsatisfactory manner."

Not surprisingly, BTI ignores the clear language of the Employment Agreement and the history of honoring and observing it for decades. Instead, BTI refers to snippets of the testimony of Longo and Lucia Di Meglio, but even those selected portions of the record only further demonstrate the validity of the Employment Agreement.   For example, Longo's stated understanding of the duration of the Employment Agreement (See generally Tr., 489:20-490:6) was

completely consistent with the contractual language, and L. Di Meglio's reference to the years that it could take for vehicles to be delivered and accepted (See generally Tr., 927:4-929:10) further demonstrated that the Employment Agreement required BTI to employ Longo for years beyond November 8, 2004 (the date that BTI terminated him) unless and until various enumerated circumstances occurred, none of which did.

It is settled that a party may not observe, honor, ratify and acquiesce in a contract for years, demanding and accepting the benefits of it and inducing reliance in the other party upon the agreement's enforceability, and then unilaterally repudiate the contract and claim that it was never valid or enforceable. *See, e.g., Johnson v. Johnson*, 191 A.D.2d 257 (1st Dept. 1993).

> (2)   Longo's employment agreement is valid under New York Law and BTI's cases are either distinguishable, inapposite, or <u>actually support Longo's position</u>.

*Rooney v. Tyson*, 91 N.Y.2d 685 (1998), a case that BTI wrongly cites for its own position, involves a situation very similar to Longo's. The New York Court of Appeals was asked by the Second Circuit to provide an authoritative statement on the threshold question of whether an oral personal services contract between professional boxer Mike Tyson and his trainer to last "for as long as the boxer fights professionally" provides a definite legally cognizable duration. *Rooney* at 687. The Court framed the issue as, "whether this temporal description constitutes an employment for an indefinite period, within the strictures of New York's at-will employment doctrine." *Id.*

The Court of Appeals expressly ruled that "[t]he agreement in this case is not silent and manifestly provides a sufficiently limiting framework." *Rooney* at 690. Defendants claim that Longo's Employment Agreement is terminable at will merely because of the language "indefinite term." The Employment Agreement provides an end period, as well as six additional early termination methods.

As the *Rooney* court held (at 692):

> New York's jurisprudence is supple and realistic, and surely not so rigid as to require that a definite duration can be found only in a determinable calendar date. Thus, although the exact end-date of Tyson's professional boxing career was not precisely calculable, the boundaries of beginning and end of the employment period are sufficiently ascertainable. That is enough to defeat a matter-of-law decision by a Judge, in substitution for resolution at the Federal trial by jury verdict. Under the employment agreement, the durational term was understandable to the parties and reasonably determinable by the fact finders.

In fact, the logic supporting *Rooney* speaks with even more force in Longo's case. *Rooney* involved an oral agreement. Longo's Employment Agreement was a written agreement. Further, the Employment Agreement was discussed in detail for over one year before signing, BTI's counsel fully participated in its drafting, and it was even signed and made legally binding in two languages, English and Italian.

BTI also relies on *De Petris v. Union Settlement Assoc.*, 86 N.Y.2d 406 (1995), *Arentz v. Morse Dry Dock and Repair Co.*, 249 N.Y. 439 (1928), and *Passy v. Guild Concepts, Ltd.*, 1992 WL 73477 (S.D.N.Y. April 2, 1992) (Keenan, J.), none of which support its position. *De Petris* is distinguishable as a matter of law, as it involved the discharge of a person who was "indisputably an at-will employee," who could not

"point to any provision limiting [his employer's] right to terminate his at-will employment or obligating to follow the personnel procedures." 86 N.Y.2d at 410. *Arentz* involved an alleged oral agreement for "permanent" employment, and the court expressly found "no such extensive agreement was made as is claimed by the plaintiff." 249 N.Y. at 441. *Passy* involved various draft employment agreements, unsigned by the employer, and an employee plaintiff who admitted that the defendant employers "did not consent to express limitations to their right to dismiss [the employee]." 1992 WL 73477 at *3.

The balance of BTI's cases, such as *Kotick v. Desai*, 123 A.D.2d 744 (2d Dept. 1986), *Wright v. Cayan,* 817 F.2d 999 (2d Cir. 1987), *Hunnewell v. Mfrs. Hanover Trust Co.*, 628 F.Supp. 765 (S.D.N.Y. 1986) (Stanton, J.), and *Weiler v. Nat'l Multiple Sclerosis Soc'y*, 1980 WL 104 (S.D.N.Y. February 27, 1980) (Motley, J.), involve demonstrably dissimilar facts, involving either oral agreements, as in *Kotick*, totally different language, as in *Wright*, or both oral agreements *and* totally different language, as in *Hunnewell* and *Weiler*.

C.   **Longo Established Each of the Elements of His Claim By Legally Sufficient Proof**

   (1)   **BTI has not met the legal standard.**

The cases that BTI itself cites to this Court set forth the high legal standard and heavy burden that applies to a motion of this type.

*Cobb v. Pozzi*, 363 F.3d 89, 101 (2d Cir. 2004), cited by BTI at page 2 of its JMOL Memorandum of Law, clearly enunciated that:

[a] district court must deny a motion for judgment as a matter of law unless, viewed in the light most favorable to the nonmoving party, 'the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable [persons] could have reached.

*Alston v. New York City Transit Authority,* 14 F.Supp.2d 308 (S.D.N.Y. 1998)

(Carter, J.), also cited by BTI, makes it clear that:

[i]n considering the Rule 50(b) motion, '[t]he district court is required to consider the evidence in the light most favorable to the party against whom the motion was made and to give that party the benefit of all reasonable inferences that the jury might have drawn in his favor from the evidence.'

14 F.Supp.2d at 311, quoting *Cruz v. Local Union No. Three of the Int'l Bhd. of Elec.*

*Workers,* 34 F.3d 1148, 1154-55 (2d Cir. 1994).

Measured by this strict standard, BTI has not come close to meeting this burden and its motion must fail.

> (2)   Longo established proof of each required
> element of his contract claim.

Longo established each required element of his contract claim. Longo's proof is set forth and analyzed in more detail in Longo's Memorandum of Law in Opposition to Defendant's Rule 59 motion, which is incorporated by reference herein. Following is a brief summary addressed to BTI's specific arguments.

Even BTI does not apparently contest the formation of the contract itself (see BTI's JMOL Memorandum of Law at page 4, footnote 3).

In analyzing the issue of Plaintiff's performance and defendant's breach, there also can be no question. Uncontradicted testimony showed that approximately

three billion dollars ($3,000,000) in contracts were awarded to the Parent Company under Longo's leadership (See Tr., 244:10-12, 1499:22-1500:22; Plaintiff's Exhibit 133, a copy of which is attached as Exhibit 5), an average of over one hundred million dollars ($100,000,000) per year. This stands in sharp contrast to the zero dollars ($0) for each of the years 2004, 2005, 2006 and 2007 under Fantappiè's tenure. See Tr., 1500:23-1501:9.

Still further, Longo testified extensively about his efforts with the company over a period of decades (See generally Tr., 197:6-231:3), Gianfranco Di Meglio corroborated such testimony (See Tr., 773:10-12), and L. Di Meglio testified with specificity as to Longo's successful efforts in resolving the problems in Boston (See Tr., 939:9-940:18), and about his general dedication to the company and the inconceivability of Longo acting against the interests of BTI (See Tr., 940:19-941:6).

In response to this overwhelming evidence, BTI has resorted to various contrived, conflicting, and conclusory claims, none of which, even if true, would refute Longo's evidence.

For example, BTI's claims with regard to Longo's abstention from the vote on the Plan of Organization are irrelevant, as such action was not taken in Longo's contractual capacity as Managing Director, but *as a member of the Board of Directors, and occurred more than one year before his termination.*

BTI's reference to the industrial sites and administration and finance misses the point for several reasons.  First, BTI itself admitted at various stages that Longo was only offered the responsibility for the industrial sites and administration and

finance, and such an offer cannot constitute an assignment as a matter of law. Second, to whatever extent the Plan of Organization nominally imposed such obligations on Longo, uncontradicted evidence showed that such an arrangement was fictitious, as Longo was never given the power to hire or fire the industrial site employees, or even give them raises or vacations, and Acquaviva, who both sides agreed was in charge of administration and finance, never reported to Longo and did not even meet Longo until some two months after he arrived in New York. See Tr., 1336:1-9.

BTI's reference to the Organizational Rules and Operational Procedures ("OR & OP") is equally unavailing. It was uncontradicted that the Board expressly requested that Longo, *in his capacity as a Board Member, not as Managing Director*, make comments to the OR & OP (See Tr., 281:24-282:9); that he raised concerns that were shared by L. Di Meglio, who was promoted following her complaints (See Tr., 932:13-935:22); and that Fantappiè repeatedly wrote Longo out of the OR & OP by deleting all references to "Managing Director," an act which could only be construed as violating the Employment Agreement. See, e.g., Tr., 717:7-718:24; Defendant's Exhibit 35 (a copy of which is attached as Exhibit 6), Fantappiè's first draft of the OR & OP, with no reference to the title "Managing Director" despite the Plan of Organization's reference to the Vice President/Managing Director; and Plaintiff's Exhibit 141 (a copy of which is attached as Exhibit 7) Longo's response, inserting "Managing Director" back in.

BTI's various other claims about performance, in addition to being untrue, are irrelevant in view of the total lack of any specific targets or goals in the Employment Agreement, and the fact that all inferences must be drawn in favor of Longo, whose proof showed not just performance, but total dedication in the interests of BTI.

Put simply, Longo established that he never either unreasonably refused to perform any "assigned duties" or unjustifiably performed such "duties" unsatisfactorily, which was the only factual issue before the jury by agreement of the parties. See discussion at Point II below regarding BTI's deliberate waiver and withdrawal of its affirmative defense of legal cause.

BTI's reliance on the various factual claims made by Fantappiè at trial is misplaced. In addition to the fact that these claims were flatly refuted by Longo, the jury unanimously rejected all of them. The issue on a Rule 50(b) motion, as BTI's own authority makes clear (see discussion above), it is not whether the defendant may have had some claims, or even evidence, in opposition, but whether plaintiff's evidence was legally sufficient when viewed in the light most favorable to the plaintiff. *See Alston*, 14 F.Supp.2d at 311.

In addition to the fact that there was no proof of Longo's improper discharge of any duty assigned to him, and no proof of rudeness or insubordination (which would not have constituted legal cause in any event), Longo established that BTI terminated him primarily on the basis of alleged expense abuses. However, BTI's claim involved years of expenses that had routinely been submitted in accordance

with the procedure directed by the two most senior executives of the Parent Company, Messrs. Capuano and Bracco (See Tr., 189:25-190:21); had been routinely reviewed and audited not just by BTI's independent outside auditors, Price Waterhouse Coopers and Deloitte & Touche at various times (See Tr., 193:13-14 and 753:13-754:25), and had also been reviewed by the Parent Company's internal auditors (See Tr., 193:22-23; 375:9-13; 756:13-15). The evidence also established that Longo gave valid explanations for his expenses despite the fact that he did not have any documentation immediately available to him to review expenses that dated back as much as seven years. See, Tr., 331:1-347:17; Plaintiff's Exhibit 134, a copy of which is attached as Exhibit 8.

Moreover, although Zayas, BTI's purported expert, claimed that Longo's submissions violated BTI's expense policies, he admitted that he was not aware of any policy that ever even applied to Longo (See Tr., 1176:1-8). Further, although Zayas claimed that a number of the submissions had "no apparent" business purpose, all that meant was that the purpose was not apparent to Zayas (See Tr., 1178:15-22), who admitted that he never asked any questions of Longo or G. Di Meglio about any of the expense submissions. (Similarly, although Acquaviva claimed certain expenses were "questionable" he never asked any questions of any person with any knowledge of those expenses.) Finally, Zayas also admitted that the IRS did not require that receipts themselves have all business purposes substantiation on them, but that any substantiation could be supplied by

contemporaneous extrinsic documentation (See Tr., 1195:10-16), which Zayas also admitted he never looked for.

Fantappiè's testimony on the topic of expenses was laughable. He claimed, for example, that he came to the conclusion, in mid-2004 as an Italian non-lawyer living in the United States for less than a year, that gifts to a *former* MUNI executive were somehow illegal. See Tr., 1482:5-1483:12.

BTI's treatment of the $10,061.50 check is even more remarkable. As detailed in the Affidavit of Michael G. Berger in support of Longo's Motion to Enter Judgment in his Favor, and for related relief, which motion papers are expressly incorporated herein, BTI either negligently failed to discover or deliberately failed to admit the existence of the refund check that Longo had sent to BTI (which BTI cashed) shortly after the questioned check to Longo had been issued. BTI also ignored the obvious and direct relationship between the $10,061.50 check and other payments not made just to Longo, but to other executives, in order to compensate them for the lost differential between ten per cent of their salary and the maximum amount the IRS permitted to be paid into their pension accounts. See, Tr., 785:9-786:11; Plaintiff's Exhibit 118, a copy of which is attached as Exhibit 9.

Finally, Longo's damages were also clearly established. The evidence showed that Longo: (a) made numerous and extensive efforts to find gainful employment in his chosen field despite the extraordinary handicaps arising out of his wrongful termination for pretextual "cause" (See Tr., 435:3-22); (b) was unsuccessful in finding a position, and had to retool himself, as he approached sixty, as a real estate

sales person (See Tr., 435:23-25); and (c) had not yet earned any income in his new profession (See Tr., 436:10-13). BTI's submission on this point essentially consisted of the purported expert testimony of Sodikoff, who essentially took the view that getting terminated for cause was good for a person's career.

Accordingly, under all the circumstances of this case, Longo's evidence was not merely sufficient as a matter of law; it was overwhelming.

**POINT II**

**BTI WAIVED AND WITHDREW
ITS AFFIRMATIVE DEFENSE OF LEGAL CAUSE;
THE DEFENSE IS MERITLESS IN ANY EVENT**

**A.      BTI Waived and Withdrew Its Affirmative Defense of Legal Cause**

Rule 51 contains a clear, simple, and logical set of provisions for submitting instructions to the jury, making objections, and preserving claims of error.

Rule 51(a) deals with the making of requests to charge. Here, BTI in its initial submission to the court as part of the pretrial proceedings specifically requested a charge on the affirmative defense of legal cause. See Defendant Breda Transportation, Inc.'s Corrected Jury Instructions, Jury Instruction No. 36.

Rule 51(b) requires the court to "inform the parties of its proposed instructions and proposed actions upon their requests" and gives each party "an opportunity to object on the record." Rule 51(b)(2). During the charging conference, the court highlighted "the issue of cause," cautioned BTI to "be careful what you ask for because you may get it," and advised BTI point blank that seeking a charge on cause would "shift the burden to the defendant to prove cause." Tr., 1107:17-22.

The court went on to reiterate that the "cause issue" was one that BTI would "have the burden on." Tr., 1109:7.

BTI's lead counsel, John D. Giansello, Esq., did not respond immediately, but said instead:

> Let us take that under further consideration.  I appreciate what the court is saying, and I understand it, and I would like to think about it for a few minutes, and when we get to the charging conference I will be prepared to say.

Following the presentation of the witness Ricardo Zayas, which was handled by Giansello's co-counsel, Oswald Cousins, Esq., the Court again raised the issue of "the affirmative defense of cause." Tr., 1153:5. Mr. Giansello responded:

> Your Honor, we've talked about that since you've mentioned it since the last time. I think we will withdraw our proposal on that one.

Tr., 1153:8-10.

It would be difficult to find a more clear expression of a knowing and deliberate waiver of an affirmative defense than the one shown here, but there is more.

Rule 51(c) allows a party to object to the "failure to give an instruction," and requires the party to do so on the record. In addition to BTI's affirmative withdrawal, it also failed to comply with Rule 51(c) when it raised no objection to the Court's charge. See Tr., 1705:25-1706:4

Rule 51(d)(1)(B) provides that:

> A party may assign as error: a failure to give an instruction *if* that party made a proper request under Rule 51(a), *and* – unless the court

> made a definitive ruling on the record rejecting the request – *also* made
> a *proper objection under Rule 51(c)*. (emphasis added)

In this case, although BTI originally submitted a charge on legal cause, it affirmatively withdrew it on the record, failed to make a "proper objection" under Rule 51(c), and is barred as a matter of law under Rule 51(d).

Remarkably, BTI does not even address, much less explain, either its deliberate waiver or withdrawal of its affirmative defense or its failure to object to the jury charge. In view of the fact that this defense was asserted as early as May 20, 2005 in the Answer and Counterclaim, and remained in the case until deep into the second week of trial, when it was withdrawn and waived after careful consideration by experienced counsel, BTI's silence on this point is deafening. Accordingly, BTI has no right to seek any relief based on its claim that it had legal cause to terminate Longo.

As detailed below, however, even if BTI had not waived the defense, BTI had no legal cause to terminate Longo.

**B.   BTI's Affirmative Defense of Legal Cause Is Meritless in Any Event**

An analysis of *Boyle v. Petrie*, 136 Misc.2d 380, 518 N.Y.S.2d 854 (Sup. Ct. N.Y. Cty. 1987), which BTI cited in its Motion for Summary Judgment at pages 16 and 22 for the proposition that it was free to terminate Longo, compels the conclusion that BTI had no legal cause.

*Boyle* involved an employment contract that provided for termination for "just cause" in the event of: "(1) willful misconduct in following the legitimate

directions of the board of directors; (2) conviction of a felony; (3) habitual drunkenness; (4) excessive absenteeism; (5) dishonesty; and (6) continuous conflicts of interests after notice in writing from the board of directors." 136 Misc.2d at 386.

Pertinent to this case, the court in *Boyle* expressly held that:

> a discharge for insubordination, rudeness, demoralization of employees, personality clashes or differences in personal style, outlook or policy does not, under the contract, constitute a discharge for just cause, but falls into the category of termination for other reasons. *Id.*

As to alleged abuse of expenses, the court in *Boyle* went on to hold (at 389-90):

> where an unauthorized use of company funds is not concealed, and is merely unjustified, termination is not warranted…There was no blatant attempt at padding or concealment by Mr. Boyle, there was no submission of nonexistent items, there was no misrepresentation or concealment, and the charges of dishonesty are rejected as an afterthought by the defendant, without essential substance.

Finally, although *Boyle* was subject to termination for failure to follow the "legitimate directions of the board of directors," the court in *Boyle* held, as this Court must here, that there was no indication that the board "ever gave any directions" that the plaintiff "failed to carry out." *Id.* at 386. Indeed, in Longo's case, his Employment Agreement did not even contain a clause of the type in *Boyle*, but even if it did, BTI's position would be meritless.

Accordingly, the *Boyle* decision makes it clear that the various complaints BTI raised at trial were insufficient as a matter of fact and law, and cannot constitute legal cause for termination, which BTI obviously recognized when it waived and withdrew the defense.

## CONCLUSION

For the reasons set forth above, BTI's motion should be denied in all respects.

Dated: New York, New York
       March 21, 2007

Respectfully submitted,

LAW OFFICES OF MICHAEL G. BERGER
*Attorneys for Plaintiff Paolo Longo*
250 Park Avenue, 20th Floor
New York, New York  10177
212.983.6000

By: _____
      Michael G. Berger (MGB 2349)

H:\longo\Post-trial Motions\Response.MOL.50(b).doc